IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 25-cr-1801-JHR |
| ) | |
| KOMILJON TOIROV, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' BRIEF IN SUPPORT OF
## APPEAL OF DETENTION ORDER

The United States of America hereby submits this brief in support of its Notice of Appeal of Detention, Doc. 7, filed on May 29, 2025. As discussed below, the defendant is a flight risk, and there are no conditions that will reasonably assure the defendant's appearance at future court proceedings. Consequently, this Court should detain the defendant pending his trial.

**I.    BACKGROUND**

On May 4, 2025, the defendant for this case, Komiljon Toirov, illegally entered the United States at approximately 2300 hours, by walking across the U.S./ Mexico International Boundary 7 miles east of the Santa Teresa Port of Entry near Sunland Park, New Mexico. When the defendant illegally entered the United States, U.S. Border Patrol received an alert regarding a sensor activation near his position. U.S. Border Patrol Agents responded to the position in question and discovered footprints of approximately three subjects. In following the footprints, Agents located three subjects attempting to conceal themselves. Defendant was one of those subjects and he was arrested. The defendant admitted to Agents that he was a citizen of Uzbekistan who had recently made an unlawful entry into the United States and lacked any legal documentation to be or remain

in the country legally. In addition to illegally entering the United States, the defendant willfully violated a defense property security regulation through his trespass into a military area.

In 1907, President Theodore Roosevelt determined that it was "necessary for the public welfare that a strip of land lying along the boundary line between the United States and the Republic of Mexico be reserved … as a protection against the smuggling of goods between the United States and said Republic." 35 Stat. 2136. For more than a century, the resulting "Roosevelt Reservation" has served as a defensive bulwark against the unlawful trafficking of persons and contraband into the United States. In April of this year, the President of the United States directed the Department of the Interior to transfer the Roosevelt Reservation to the Department of Defense, which has now incorporated it – as the New Mexico National Defense Area (NMNDA) – into the U.S. Army Fort Huachuca installation. On April 24, 2025, signs were posted along the New Mexico National Defense Areas in both English and Spanish that it is a restricted area, and that unauthorized entry is prohibited.

The defendant's trespass into this area has legal consequences. These consequences include charges under Title 50 U.S.C. § 797 and 18 U.S.C § 1382. On May 19, 2025, the Honorable Gregory B. Wormuth, Chief United States Magistrate Judge, issued an order dismissing charges under 50 U.S.C. § 797 and 18 U.S.C. § 1382. Doc. 4. The Government then filed an information reasserting those charges. Doc. 6.

On May 29, 2025, the defendant pled guilty to Count 1, 8 U.S.C. § 1325(a)(1), and entered not guilty pleas to Count 2, 50 U.S.C. § 797, and Count 3, 18 U.S.C. § 1382. The Court ordered that the defendant be released on an O/R bond and that it be held it in abeyance for 24 hours for the Government's appeal. On the same day, the United States filed its Notice of Appeal of Release. *See* Doc. 7.

## II.     STANDARD OF REVIEW

"The standard of review for a magistrate judge's detention or release order under § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003); *see also United States v. Ramos-Caballero*, 2021 WL 5176051, *2 (10th Cir. Nov. 8, 2021) (unpublished); *United States v. Disher*, 650 F.Supp.2d 1131, 1135 (D.N.M. 2009) ("[t]he district court conducts a de novo review of the Magistrate Judge's pretrial detention order and must make its own determination if pretrial detention is proper").

## III.    LAW REGARDING PRE-TRIAL DETENTION

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616; 18 U.S.C. § 3142(f). To determine whether there are conditions which can assure the defendant's appearance at trial and the safety of the community, the Court must consider:

(1)   the nature and circumstances of the offense charged, including whether the offense . . . involves a firearm;
(2)   the weight of the evidence against the person;
(3)   the history and characteristics of the person, including
   (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance a court proceedings; and
   (B)   whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4)   the nature and seriousness of the danger to any person or the community that would be posed by release.

*Cisneros*, 328 F.3d at 617 (citing 18 U.S.C. § 3142(g)).

## IV. ANALYSIS

A consideration of the relevant factors under 18 U.S.C. § 3142(g), establishes that the defendant is a flight risk and that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required." 18 U.S.C. § 3142(e)(1). Consequently, the Court should "order the detention of [the defendant] before trial." *Id.*

### A. Nature and circumstances of the offense

The defendant has been charged with illegally entering the United States in violation of 8 U.S.C. § 1325(a)(1), a crime of which he has pled guilty to, and for trespassing into a restricted military area in violation of Title 50 U.S.C. § 797 and 18 U.S.C § 1382. The "nature and circumstances of the offense charged," 18 U.S.C. § 3142(g)(1), weigh heavily against the release of the defendant, as a risk of non-appearance. First, the defendant has admitted guilt and been sentenced under U.S.C. § 1325(a)(1). As a basis of defendant's guilty plea, it has been found that he is not a citizen of the United States, and that he entered the United States at a place other than a designated port of entry. The obvious purpose behind sneaking across the border in the middle of the night is to go freely in the country, without official recognition, supervision, or legal status. The defendant therefore has a strong incentive to disobey any conditions of release – to avoid conviction, further jail time, and deportation. There can be no conditions that can be fashioned to secure his appearance in future court proceedings. In sum, the nature and circumstances of the offense show that the defendant is a risk of non-appearance.

### B. The weight of the evidence

The Government maintains that the "weight of the evidence against [the defendant]" is strong. 18 U.S.C. § 3142(g)(2). An assessment of the evidence's weight must necessarily be made

against the elements of the statute, and the Government therefore briefly sets forth its views on the *mens rea* element. Should the Court desire further briefing on this issue, the Government would be glad to provide it.[1]

First, in regard to the charge under § 797, the Government submits that requiring the Government to prove that a defendant has entered the NMNDA after unlawfully crossing into the United States from Mexico knew that his presence in the NMNDA was unauthorized imposes a textual scienter requirement. Pursuant to *Bryan v. United States*, 524 U.S. 184 (1998), in meeting its *mens rea* obligations, it is sufficient for the Government to show that the defendant knew his presence on the land was unauthorized because he had just illegally crossed the international border. *Id.* at 191-93 (explaining that a willful *mens rea* requires only that the defendant have acted with knowledge that his conduct was unlawful, it does not require the Government to show that the defendant knew the specific statute he was violating). This is, in part, because the NMNDA's status is a jurisdictional element. Because the legal status of a defendant's entry point in a National Defense Area is jurisdictional, any scienter element would not reach that fact. *See Torres v. Lynch*, 578 U.S. 452, 468 (2016) ("[W]hen Congress has said nothing about the mental state pertaining to a jurisdictional element, … [c]ourts assume that Congress wanted such an element to stand outside the otherwise applicable *mens rea* requirement."). Finally, such a construction does not risk criminalizing otherwise lawful conduct in these circumstances because when a defendant enters the country without authorization or inspection, he is not engaged in "otherwise innocent conduct." *See Rehaif v. United States*, 588 U.S. 225, 229 (2019) (indicating that the presumption of scienter

---

[1] These points were addressed in significantly greater detail in the Government's brief appealing Magistrate Judge Wormuth's Order. *See United States v. Rozlkova*, 25-cr-1867, Doc. 6.

5

operates only insofar as necessary "to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize *otherwise innocent conduct*.'").

For similar reasons, imposing a knowledge-of-land-status element for § 1382 contravenes the plain language of the statute. This statute criminalizes one who goes upon a military installation for a purpose prohibited by law. Simply put, no one who "goes upon a[] military … installation[] for a[] purpose prohibited by law," 18 U.S.C. § 1382, can claim that he was engaged in "otherwise innocent conduct." And in cases where the "purpose prohibited by law" is a further crime that does not itself depend on the military status of the land, the military status of the site serves only to confer federal jurisdiction; it does not create the "wrongful[ness]" of the defendant's conduct. Accordingly, when a defendant enters the NMNDA while committing an unlawful entry into the United States, he has violated the plain text of the statute.

Under this reading of these statutes, Defendant's unlawful entry into the United States (which he has admitted to), through the NMNDA, serves to establish the Government's burden in regard to the *mens rea* required. The Government accordingly submits that the weight of the evidence is strong in this case.

### C. CONCLUSION

The defendant is a flight risk. Because there are no conditions that will reasonably assure his appearance at future court proceedings, the Government requests that he be detained pending trial. 18 U.S.C. § 3142(e)(1).

**WHEREFORE**, the United States respectfully requests that the Court find that the defendant is a flight risk and that no conditions can reasonably assure the defendant's future appearance in Court and order that the defendant be detained pending the resolution of this case.

Respectfully submitted,

RYAN ELLISON
United States Attorney

*Electronically filed 6/6/2025*
JACKSON K. DERING V
GRANT GARNER
Assistant United States Attorneys
200 N. Church Street
Las Cruces, New Mexico 88001

I HEREBY CERTIFY that on June 6, 2025 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic filing system which will send notification to all counsel of record.

*Electronically filed 6/6/2025*
JACKSON K. DERING V
Assistant United States Attorney